the bill is now held—*Decreed*, that the bill be dismissed with costs. The complainant appealed to this court.

The cause was argued before Chase, Ch. J. and Buchanan, and Nicholson, J.

*Martin*, for the Appellant, contended, that the endorsing of bills by *Payson* was not such a transaction as constituted him a factor; that buying and selling bills constituted the party a factor; but it was not within the character of a factor to endorse bills, and he could not retain a lien for any balance of account or supposed liability.

*W. Dorsey*, for the Appellees, referred to *Jourdaine vs. Lefevre*, 1 *Esp. Rep.* 66; and *Walker vs. Birch*, 6 *T. R.* 258.

DECREE AFFIRMED.

## Dickinson vs. Haslet.

Appeal from *Baltimore* County Court. *Assumpsit* for money had and received, for money laid out and expended, and for money lent and advanced, brought by a shipper of goods against the captain and consignee of the cargo, to recover money retained for freight, &c. The general issue was pleaded.

*In an action by a shipper of goods against the consignee of the cargo, to recover money retained for freight—Held, that the plaintiff was at liberty to show the vessel not to have been sea worthy at the commencement of her voyage, in order to resist the defendant's claim to freight; and if the jury believed the vessel not to have been sea worthy, and competent to perform the voyage at the time of its commencement that then the defendant was not entitled to retain any thing for freight, and that the plaintiff was entitled to recover the amount so retained.*

1. At the trial the plaintiff, (now appellee,) gave in evidence a bill of lading. dated the 11th of March 1806, of certain goods shipped by the plaintiff on board the schooner called *The Experiment*, whereof the defendant was master, on a voyage from *Baltimore* to *Barbadoes*, or a market, to be delivered to the defendant, or to his assigns, he or they paying freight for the said goods, &c. one half the freight to be paid at the port of delivery, and the other half upon the return of the schooner to *Baltimore*, with primage and average accustomed. He further gave in evidence an account rendered by the defendant to the plaintiff, charging him with 5 pr. ct. commission, transient and county tax, freight, storage, and a bill of exchange, and crediting him with the proceeds of the sale of the cargo. That the schooner *Experiment* sailed from the port of *Baltimore*, on her said voyage, on the 14th of March 1806, and on the 31st of the same month arrived at the Island of *Bermuda;* and that the goods mentioned in the bill of lading were there landed

1813.

Dickinson
vs
Haslet

and sold by the defendant. And in order to show that the defendant was not justified in retaining the amount of freight charged in the account aforesaid, the plaintiff offered in evidence, that the said vessel, at the commencement of the voyage from the port of *Baltimore*, was not in a state of sea-worthiness, and that she was not competent to the performance of the voyage. To this testimony the defendant objected. But the court, [*Nicholson*, Ch. J.] was of opinion that the plaintiff was at liberty to show the vessel not to have been sea-worthy at the commencement of her voyage, in order to resist the defendant's claim to freight. The defendant excepted.

2. The defendant then gave in evidence, that he invested the nett proceeds of said sales, in the account mentioned, in a bill of exchange stated in the account, and with the said bill purchased merchandize, which he delivered over to, and which was accepted by, the plaintiff, at *Baltimore*. The plaintiff then gave in evidence a protest made on the 14th April 1806, by the defendant, before the captain general, &c. of the Island of *Bermuda*, stating, that on the 14th March 1806, he sailed in the schooner *Experiment* as master, from *Baltimore* for the Island of *Barbadoes*, and a market, with a cargo on board consisting of flour, &c. That proceeding down the bay, his main boom having been carried away in a squall, he put into Severn river to get a new one. That on the 21st March 1806, having got a new main boom, he sailed from the river aforesaid, &c. That on the 24th March 1806, in the Gulph stream, he met with a heavy gale of wind from the N E, which made a breach over the said schooner fore and aft; that to get out of the gulph he thought it advisable to run to the westward. That shortly afterwards a tremendous sea struck *The Experiment*, and hove her down on her beam ends, &c. That on the 29th his mate and crew declared the said schooner, from the injuries received in the repeated gales of wind since her leaving the land, was unfit to proceed on her destined voyage, and that they thought it for the interest of all concerned to make the nearest port. That he directed his course to *Bermuda*, where he arrived on the 31st, and visited the governor, and noted his protest. That a warrant to survey the schooner was obtained, and the gentleman named to survey, reported her not sea-worthy, and condemned

her accordingly. The defendant then prayed the court to direct the jury, that on the evidence above given the plaintiff was not entitled to recover. But the court were of opinion, and so directed the jury, that if they should believe the vessel not to have been sea-worthy, and competent to perform the voyage at the time of its commencement, that then the defendant is not entitled to retain any thing for freight, and of course that the plaintiff may recover in this action the amount so retained by the defendant. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, EARLE, and JOHNSON, J. by

*Brice*, for the Appellant; and by
*Purviance*, for the Appellee.

JUDGMENT AFFIRMED.

*1813.*
Pottenger
vs
Steuart

————————

POTTENGER'S Ex'x. *et al.* vs. STEUART, *et ux.*     DEC. 1813.

APPEAL from a decree of the Court of Chancery. The case, so far as is material, appears to be fully stated in the chancellor's decree.

KILTY, Chancellor, (December term 1807.) The bill originally filed was by *Steuart* and wife, against *Mary Pottenger*, as executrix of *Robert Pottenger*, to which an amendment was made, making *John Gassaway* a party defendant. A cross bill was also filed by *M. Pottenger*, ex-

N. G, by his will dated in 1784, devised as follow. "I give and bequeath unto my son J G, and to the heirs of his body lawfully begotten, all my real estate, at the age of 22 years, provided he does not marry before he arrives to the age of 21 years; if he does, it is then my will that no part of my real estate shall be

delivered up to him till he arrives to the age of 25 years. And the profits arising on the said real estate during the term of five years, to be equally divided between my two daughters hereafter named. But if my said son J should die without lawful issue, I then give and bequeath unto my daughters M and S, and to the heirs of their bodies lawfully begotten, all my real estate, to be equally divided between them It is also my will, that if my said daughters should marry before the age of 25 years, that then my said real estate shall be taken into the possession of my executors hereafter named, and not to be given to them till they arrive to the age of 25 years." He then bequeathed to his said two daughters all the money due to him, upon bond, &c. to be equally divided between them when they arrive to the age of 21 years And after the payment of his debts, he bequeathed to his said three children all the residue of his personal estate, to be delivered up to them when they arrived to the age of 21 years, to be equally divided amongst them; and appointed R P his sole executor, and died in 1791. J G, the son, arrived at the age of 21 years in December 1796, without having married—*Held*, that J G, the son, took an estate tail *in presenti* with a remainder in tail to the two daughters M and S, as tenants in common; and that the two daughters were not to have any of the profits of the real estate, only on the contingency of the son's marrying before 21.

M, under the age of 21 years, but above the age of 16, by power of attorney authorised J G to make a settlement with R P, of her portion of her father's real and personal estate. Such settlement was made, and the property delivered to, and a receipt given by, J G, on which settlement M became indebted to R P in £617 9 9, for which sum J G gave his bond. On a bill filed in chancery by M and her husband, against the executrix of R P, to set aside the settlement so made, and to have an account of the said estate, the defendant pleaded and relied on the said settlement and payment to J G as a bar—*Held* that the settlement be annulled and set aside, and that the defendant, as executrix of R P, she having admitted assets, account with the complainants, &c.

In cases of intestacy, or there being no contrary direction by will, a female, above the age of 16, would be capable of authorising any person, by a common order, to receive her estate, by which she would be bound as far as any payment or delivery should be made. But it is not so clear that she would be bound by a settlement made by her agent, although specially authorised by her. *Per Kilty*, Chan.